D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IMRAN ALI,

       Plaintiff,        **MEMORANDUM & ORDER**

  -against-            **11-CV-5297 (NGG) (VMS)**

POLICE OFFICER WILLIAM CONNICK and
SERGEANT DONALD KIPP,

       Defendants.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  Plaintiff Imran Ali brings this action against two employees of the New York City Police Department (NPYD), Police Officer William Connick ("Connick") and Sergeant Donald Kipp ("Kipp"). Pursuant to 42 U.S.C. §§ 1983 and 1985, he asserts claims of excessive force (against Kipp only), violation of his equal protection rights under the Fourteenth Amendment (against both Defendants), and conspiracy (against both Defendants). (See Am. Compl. (Dkt. 7) ¶ 7.) Before the court is Defendants' motion for partial summary judgment. (Not. of Mot. for Partial Summ. J. (Dkt. 37).) For the reasons discussed below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

I.  **BACKGROUND**

 A.  **Factual Background**

  Except as otherwise noted, the following facts are undisputed. Where facts are in dispute, the court credits the facts as stated in Plaintiff's deposition transcript or affidavit, and/or in the light most favorable to Plaintiff. The court has not considered facts introduced by the parties that are not material to Plaintiff's claims.

  On the morning of July 17, 2009, Plaintiff was involved in a car accident when his car struck a parked car at the corner of 142 Street and Lakewood Avenue in Queens. (Defs.'

1

Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1") (Dkt. 38) ¶ 1; Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") (Dkt. 41) at 2.)[1] Defendant Connick arrived shortly thereafter and placed Plaintiff under arrest at 4:54 a.m. for driving while intoxicated. (Defs.' 56.1 ¶ 1; Pl.'s 56.1 at 1.) Two other officers, Officers Sessa and Heerbrandt, arrived in a cage car to drive Plaintiff to the 103rd Precinct. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 at 3.) Connick remained at the scene of the accident to complete an accident investigation while Plaintiff was transported to the precinct. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 at 3-4.)

Once at the precinct, Plaintiff was brought to a desk where Defendant Kipp was located, and he was asked pedigree information. (Defs.' 56.1 ¶ 10; Pl.'s 56.1 at 4.) Plaintiff claims that Kipp "became belligerent and started going crazy . . . after we exchanged words." (Pl.'s 56.1 ¶ 4; Tr. of Oct. 9, 2012, and Jan. 23, 2013, Dep. of Imran Ali ("Pl. Dep.") (Decl. of Kevin L. Mosley ("Mosley Decl.") (Dkt. 42), Ex. B (Dkt. 42-2)) at 205:12.) Plaintiff further claims that he was then "brought, dragged, pushed" into a holding cell by Kipp. (Pl.'s 56.1 ¶ 5; Pl. Dep. at 207:2-7.) According to Plaintiff, Kipp then drove Plaintiff's head into the wall three or four times. (Pl.'s 56.1 ¶ 6; Pl. Dep. at 220:23-25.) During this time, Plaintiff alleges that Kipp and possibly other officers directed ethnic slurs at him. (Pl.'s 56.1 ¶ 7; Pl. Dep at 239:23-240:19.) Plaintiff cannot recall the words that were used, but he has testified that they were about "my race and stuff, religion, stuff like that." (Defs.' 56.1 ¶ 13; Pl.'s 56.1 at 4; Pl. Dep. at 240:1-2.) Plaintiff further claims that Kipp directed these slurs at him while slamming Plaintiff's head into the cell gate and wall, until Plaintiff passed out from his injuries. (Pl.'s 56.1 ¶¶ 7-8; Pl. Dep. at 240:23-241:2, 236.) When asked what was said to him specifically, Plaintiff testified: "I can't

---

[1] Plaintiff's Rule 56.1 Statement is divided into two parts. The first part includes direct responses to Defendants' 56.1 Statement, while the second part enumerates additional facts that Plaintiff believes to be undisputed. Citations to the first part are indicated by page number, while citations to the second part are indicated by paragraph number.

. . . really remember off the top of my head, but I remember some nature of disrespect. I believe they were trying to say I was a drug dealer, too, because I was 21 years old and I was driving a BMW," (Defs.' 56.1 ¶ 14; Pl. Dep. at 240:4-7) and "I know he was saying some kind of slurs about Muslim and this and that. I can't get the exact words, but it was something to that nature," (Defs.' 56.1 ¶ 14; Pl. Dep. at 240:10-12; see also Pl.'s 56.1 at 4-5.)

Emergency services were contacted and Plaintiff was transported to Queens Hospital Center. (Defs.' 56.1 ¶ 18; Pl.'s 56.1 ¶ 8.) Connick and Kipp signed a document labeled "Medical Treatment of Prisoner," stating that "defendant did bang his head into the cell numerous times causing a laceration to his head." (Pl.'s 56.1 ¶ 12; Medical Treatment of Prisoner (Mosley Decl., Ex. C (Dkt. 42-3)).) Plaintiff claims that he needed multiple staples on the top of his head and stitches in his face as a result of his head injuries. (Pl.'s 56.1 ¶ 9; see also Photograph of Pl.'s Injuries (Mosley Decl., Ex. H (Dkt. 42-8)); July 17, 2009, Police Dept. Memo from Desk Officer (Mosley Decl., Ex. J (Dkt. 42-10)) ¶ 3.)

### B. Procedural History

On February 13, 2012, Plaintiff filed his Amended Complaint in which he asserted claims pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, as well as under state law, alleging excessive force, false arrest, assault and battery, negligence, deliberate indifference to medical needs, federal conspiracy, and violation of his civil rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (Am. Compl.) In addition to Connick and Kipp, Plaintiff named as Defendants the City of New York (the "City") and the NYPD. (Id.) On January 29, 2014, following the completion of discovery, Plaintiff voluntarily withdrew all claims against the City and the NYPD, all state law claims (against all Defendants), the § 1983 false arrest claim (against all Defendants), and the claim for excessive force (against Connick

only). (See Stipulation of Partial Voluntary Dismissal and Continuance ("Stipulation") (Dkt. 34).)

Before the court is Defendants' motion for partial summary judgment on Plaintiff's equal protection and conspiracy claims. (Not. of Mot. for Partial Summ. J.) Defendants have not moved for summary judgment on Plaintiff's excessive force claim. (Id.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003); see also Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material

facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations," Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).

**B.      Equal Protection**

The Fourteenth Amendment commands that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Second Circuit has held that a plaintiff may bring an equal protection claim based on racial discrimination: (1) where a law or policy expressly classifies on the basis of race, (2) where a facially neutral law or policy is applied in an intentionally discriminatory manner, or (3) where a facially neutral statute or policy has an adverse effect and was motivated by discriminatory animus. Brown v. Oneonta, 221 F.3d 329, 337 (2d Cir. 1999), overruled in part on other grounds by Gonzaga Univ. v. Doe, 536 U.S. 273 (2002); see also Snoussi v. Bivona, No. 05-CV-3133 (RJD) (LB), 2010 WL 3924255, at *4-5 (E.D.N.Y. Feb. 17, 2010) (report and recommendation), adopted, 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010). Alternatively, a plaintiff may claim an equal protection violation under the "class of one" theory, asserting that he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," despite the fact that the plaintiff does not claim membership in a particular class or group. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Giordano v. City of New York, 274 F.3d 740, 743 (2d Cir. 2001).

Generally, a plaintiff challenging law enforcement conduct on equal protection grounds "must demonstrate that . . . he was treated differently from other similarly-situated individuals." Vilkhu v. City of New York, No. 06-CV-2095 (CPS) (JO), 2008 WL 1991099, at *5 (E.D.N.Y. May 5, 2008). However, a plaintiff need not "show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection" where

5

he or she has alleged "an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus." Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001); see also Vilkhu, 2008 WL 1991099, at *5.

With regard to the governmental act in question, verbal harassment alone does not amount to a constitutional deprivation. Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (holding that name-calling without "any appreciable injury" did not violate inmate's constitutional rights); see also D'Attore v. New York City, No. 10-CV-6646 (WHP) (JCF), 2012 WL 2952853, at *6 (S.D.N.Y. July 19, 2012) (citing Baskerville v. Goord, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000) ("Mere verbal abuse or the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to [Section] 1983.")); Haussman v. Fergus, 894 F. Supp. 142, 149 n.20 (S.D.N.Y. 1995) ("Offensive racial comments cannot form the basis of a § 1983 claim."). However, where verbal statements are accompanied by an appreciable injury, an equal protection claim may be cognizable. See Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order) ("When the verbal harassment and simultaneous physical abuse . . . are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race and religion."); see also Baskerville v. Goord, No. 97-CV-6413, 1998 WL 778396, at *7 (S.D.N.Y. Nov. 5, 1998) ("Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie.") aff'd sum nom. Baskerville v. Mulvaney, 411 F.3d 45 (2d Cir. 2005).

C.   Conspiracy Claims under Sections 1983 and 1985

Defendants moving papers appear to presume that Plaintiff's conspiracy claim is brought pursuant only to § 1983. (Defs.' Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Defs.' Mem.") (Dkt. 40) at 6.) However, Plaintiff's Amended Complaint specifically mentions § 1985, which also prohibits conspiracies to interfere with civil rights. (Am. Compl. ¶¶ 1, 7, 21, 24, 29.) See also 42 U.S.C. § 1985(3); Turkmen v. Hasty, 789 F.3d 218 (2d Cir. 2015.) For that matter, while Plaintiff generally alleges a § 1985 violation, he does not clearly indicate whether he also brings a conspiracy claim under § 1983. Because Plaintiff's allegations are sufficient to state a claim under either section, and the required elements for each are similar, the court will analyze both together.

In order to bring a § 1983 conspiracy claim, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); see also Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). To bring a claim under § 1985(3),[2] a plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities of the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). In addition, § 1985(3) requires a plaintiff to allege that he or she is a member of a protected class and that the conspirators acted with racial, or otherwise class-based "invidiously discriminatory motivation." Griffin v. Breckenridge, 403

---

[2] Plaintiff does not indicate, either in his Amended Complaint or his opposition brief, that he is asserting a conspiracy claim pursuant to subsection 3 of § 1985. However, it is the only subsection that could apply to the facts of his case.

7

U.S. 88, 102 (1971); see also Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994); Britt v. Garcia, 457 F.3d 264, 270 n.4 (2d Cir. 2006).

## III. DISCUSSION

### A. Equal Protection

#### 1. Defendant Connick

Plaintiff's Amended Complaint asserts equal protection claims against both Kipp and Connick, premised on his claims of false arrest and excessive force. (Am. Compl.) As Defendants' correctly point out in their moving papers, Plaintiff has voluntarily withdrawn his false arrest claims against all Defendants as well as his excessive force claim against Connick. (Defs.' Mem. at 11; see also Stipulation ¶¶ 2, 6.) Likewise, it is undisputed that Connick remained at the location of Plaintiff's arrest in order to complete his investigation and was not present at the precinct while Plaintiff allegedly was subjected to excessive force by Kipp. (Defs.' 56.1 ¶¶ 7, 8; Pl.'s 56.1 at 3-4.) Defendants argue that Plaintiff's equal protection claim against Connick therefore fails as a matter of law, and the court agrees.

The court also notes that by neglecting to respond to Defendants' arguments in his opposition, it appears that Plaintiff has withdrawn or abandoned his equal protection claim against Connick. See Arias v. Nasdaq/Amex Mkt. Grp., No. 00-CV-9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing "abandoned" claims where plaintiff's summary judgment opposition papers neither "refute[d] nor even mention[ed]" defendant's argument for summary judgment); see also Local Civ. R. 7.1 (requiring all oppositions and replies to a motion to be supported by a memorandum of law setting forth the cases and other authorities relied upon in opposition to the motion).

Accordingly, the court grants Defendants' motion for summary judgment with respect to Plaintiff's equal protection claim against Connick.

2. Defendant Kipp

Plaintiff's Amended Complaint alleges that Defendant Kipp subjected him to excessive force "based upon plaintiff's ethnicity, as an American Muslim, and man of Middle Eastern appearance . . . ." (Am. Compl. ¶ 21; see also id. ¶¶ 24, 29.) Defendants argue that Plaintiff has failed to show "that similarly situated individuals who were not of Plaintiff's ethnicity were treated differently from [Plaintiff]." (Defs.' Mem. at 12.) However, Plaintiff is not required to show differential treatment, because his claim is based on a theory of intentional discrimination. Pyke, 258 F.3d at 108-10. As the Second Circuit made clear in Pyke, "a plaintiff who . . . alleges an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus, is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection."[3] Id. at 110 (emphases added).

Plaintiff's equal protection claim is similar to those made in Vilkhu and Snoussi. In Vilkhu, a U.S. citizen of Indian origin brought an equal protection claim alleging that police made "insulting remarks about his culture" and used "racial epithets" while physically assaulting him. 2008 WL 1991099, at *3, *5. The court held that the plaintiff was not required to compare himself to other similarly situated non-Indians, because he alleged that officers both used an

---

[3] Defendants concede that Pyke articulates several theories of equal protection liability that do not require a plaintiff to show differential treatment. (Defs.' Mem. at 12.) However, Defendants only point to two such theories—where a plaintiff alleges the existence of a law or policy with an express racial classification, or that a facially neutral statute with an adverse effect was motivated by discriminatory animus. Id. The theory Defendants ignore—where a plaintiff alleges that a facially neutral law or policy has been applied in an intentionally discriminatory manner—is the theory that Plaintiff asserts in this case.

9

express racial classification and "applied the neutral policy of detaining someone in an intentionally discriminatory manner."[4] Id. at *5. Likewise, in Snoussi, the plaintiff alleged that federal agents and a detective of the NYPD assaulted him and "berated him with derogatory comments aimed at his religious, ethnic and racial background." 2010 WL 3924255, at *5. The court held that the plaintiff's complaint "raise[d] a theory of equal protection which does not require him to make comparisons to others similarly situated." Id.

Defendants' moving papers argue that Plaintiff has "fail[ed] to allege anywhere that officers used such an express racial classification and singled him out because of his origin and that an express racial classification was applied to the neutral policy of detaining someone in an intentionally discriminatory manner." (Defs.' Mem. at 12.) This does not accurately state the relevant legal standard, nor does it accurately describe Plaintiff's claims. Among other theories of equal protection claims outlined above, a plaintiff may allege either an express racial classification, or that a facially neutral statute or policy has been applied in an intentionally discriminatory manner. Pyke, 258 F.3d at 110; see also Brown, 221 F.3d at 337. Plaintiff here does not purport to identify a law or policy that contains an express racial classification. Instead, he appears to allege that a neutral policy—Defendants' use of force against an arrestee—has been applied in an intentionally discriminatory manner.[5] See, e.g. Raza v. City of New

---

[4] The court in Vilkhu apparently considered the allegation that officers singled out the plaintiff for harassment because of his race to be a claim of express racial classification. However, the express classification theory of equal protection liability is more commonly understood to apply where a plaintiff identifies an existing law or policy. See, e.g., Raza v. City of New York, 998 F. Supp. 2d 70, 78 (E.D.N.Y. 2013) (plaintiffs could show discriminatory intent under express classification theory by showing that NYPD adopted policy of singling out Muslims for heightened surveillance); cf Brown, 221 F.3d at 337 (plaintiffs who claimed they were questioned based solely on their race could not identify any law or policy that contained an express racial classification). Here, the court does not construe Plaintiff's Amended Complaint to allege an express racial classification.

[5] Plaintiff does not clearly articulate that his claim is based on the discriminatory application theory within the Pyke framework, but he is not required to do so. See Morris v. Schroder Capital Mgmt. Int'l, 445 F.3d 525, 530 n.3 (2d Cir. 2006) ("A complaint need not set out the correct legal theory on which the claim is based, so long as the complaint provides full notice of the circumstances giving rise to the plaintiff's claims."); see also Burwell v.

York, 998 F. Supp. 2d 70, 78-81 (E.D.N.Y. 2013) (allowing plaintiffs to proceed with an equal protection claim based, in part, on a theory that NYPD investigatory authority was discriminatorily applied to Muslims); Burwell v. Payton, No. 12-CV-166 (CR), 2013 WL 1386290, at *5 (D. Vt. Apr. 4, 2013) (police department's use-of-force rules were facially neutral and thus could form the basis of a § 1983 equal protection claim under the discriminatory application theory).

According to Pyke, a plaintiff alleging the discriminatory application of a neutral law or policy must demonstrate that the application of the policy was motivated by discrimination. 258 F.3d at 110. Once the plaintiff shows that the application was so motivated, "at least in part," the defendant must show that the same result would have occurred even without consideration of the plaintiff's race or national origin. United States v. City of Yonkers, 96 F.3d 600, 612 (2d Cir. 1996). "If the defendant comes forward with no such proof or if the trier of fact is unpersuaded that [consideration of the plaintiff's class membership] did not contribute to the outcome . . . the equal protection claim is established." Id. (internal quotation marks and citation omitted).

Defendants contend that Plaintiff's equal protection claim must be dismissed because he has failed "to adduce any discovery" with regard to his allegation that he was subjected to excessive force based on his race or national origin. (Defs.' Mem. at 12; Defs.' Mem. of Law in Reply in Support of Mot. for Partial Summ. J. ("Defs.' Reply") (Dkt. 46) at 10.) But at the summary judgment stage, the court accepts the facts as stated in Plaintiff's deposition transcript or affidavit, to the extent they are not contradicted by the record. See Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

---

Peyton, No. 5:12-CV-166 (CR), 2013 WL 1386290, at *4, n.3 (D. Vt. Apr. 4, 2013) (plaintiff is not required to specifically allege the Pyke framework).

11

in his favor."); see also Trammell, 338 F.3d at 161 (in evaluating motion for summary judgment, court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor").

Furthermore, in citing Raza for the proposition that Plaintiff was somehow required to produce corroborating evidence through discovery, Defendants misinterpret the court's holding in that case. In Raza, the plaintiffs alleged that the NYPD developed and maintained an express policy singling out Muslims for heightened surveillance and investigation, and, alternatively, that neutral policies were applied in an intentionally discriminatory manner. 998 F. Supp. 2d at 73. The court granted in part the plaintiffs' motion for expedited discovery with regard to any such policy and also reasoned that, "[w]ithout this discovery, Plaintiffs would be preemptively and irreparably prohibited from proving that Defendants' alleged discriminatory intent was a motivating factor in the investigation and surveillance . . . ." Id. at 81. In citing this language, Defendants overlook the fact that, unlike the Raza plaintiffs, Plaintiff here does not allege the existence of an express racial classification law or policy. In addition, Plaintiff has testified to direct evidence of Kipp's discriminatory intent, namely the use of racial slurs simultaneous with physical abuse. (Pl.'s 56.1 ¶¶ 6-8.)

In the context of claims brought against law enforcement officers, courts in this circuit and elsewhere have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with physical abuse or other unlawful actions, may establish an equal protection violation. See, e.g., Cole, 379 F. App'x at 43 ("When the verbal harassment and simultaneous physical abuse . . . are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race and religion."); Williams v. Kaufman Cty, 352 F.3d 994, 1013

(5th Cir. 2003) ("[R]acial epithets that accompany harassment or a violation of established rights may amount to a separate equal protection violation.") (citing Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999) ("The use of an epithet . . . is strong evidence that a comment or action is racially motivated.")); King v. City of Eastpointe, 86 F. App'x 790, 814 (6th Cir. 2003) (unpublished decision) ("The use of racially discriminatory language can provide evidence of a discriminatory purpose when that language is coupled with some additional harassment or constitutional violation."); Burton v. Livingston, 791 F.2d 97, 100 n.1 (8th Cir. 1986) ("[W]hen the racially derogatory language is coupled with conduct infringing the prisoner's right to security of his person, an inference arises that the conduct was motivated by racial bias.").

Defendants deny that Plaintiff was subjected to any racial slurs or physical abuse, but this is typically the type of credibility determination that must be left to a jury. See Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005) ("'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'") (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)); Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("In applying [the summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) ("On a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried.").

Defendants raise a stronger argument in challenging the sufficiency of Plaintiff's evidence, as it is based almost entirely on Plaintiff's own, and at times vague, testimony. (Defs.' Mem. at 13). Although the court accepts Plaintiff's sworn testimony for purposes of summary judgment, "the non-moving party must produce more than a scintilla of admissible evidence that

supports the pleadings." Esmont v. City of New York, 371 F. Supp. 2d 202, 210 (E.D.N.Y. 2005); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90 (1968); Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003). Indeed, the court may make some assessment of a plaintiff's accounts "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete." Jeffreys, 426 F.3d at 554. However, this case is not one of those rare circumstances.

In Jeffreys, the plaintiff alleged that he was assaulted by police officers and thrown out of a third-floor window, but he could not say how many officers were involved, identify any of the individuals who allegedly participated in the incident, or provide any descriptions of their appearance. Id. at 552. He also testified at one point that he had, in fact, jumped out of the window. Id. at 555 n.2. In addition, his claim that he was hit over the head with a flashlight was directly contradicted by medical reports showing no indication of a head injury. Id. at 553. In granting the defendants' motion for summary judgment, the district court found that the plaintiff's testimony was incomplete, contradictory, and improbable—a determination that the Second Circuit upheld. Id. at 555.

Likewise, in Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 470-71 (S.D.N.Y. 1998) (Sotomayor, J.), the plaintiff claimed that police officers caused him numerous injuries, none of which were substantiated by medical examination, and he repeatedly submitted affidavits that significantly contradicted his prior sworn testimony concerning his injuries and the location of the alleged assault. Then-Judge Sotomayor granted summary judgment for the defendants, stating that "when the facts alleged are so contradictory that doubt is cast upon their plausibility,

[the court may] pierce the veil of the complaint's factual allegations . . . and dismiss the claim." Id. at 470 (internal quotation marks omitted).

This case is not one of those circumstances where the court may pierce the veil of the complaint's factual allegations. Plaintiff has presented sworn testimony, including medical records and photographs, of his physical injuries, which Defendants do not dispute. (Pl.'s 56.1 ¶ 9.) Plaintiff has clearly identified Kipp as the officer who allegedly assaulted him, and his testimony regarding the details of the alleged assault, while at times unclear, is not so contradictory or inconsistent as to render it facially implausible. Nor is Plaintiff's testimony conclusory or speculative, as Defendants allege. See Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712 (2d Cir. 2010) (plaintiff's testimony was not conclusory, because she was "testifying to the content of a conversation at which she was allegedly present").

Plaintiff does rely exclusively on his own testimony for the assertion that Kipp directed racial slurs at him. However, this is the type of "he said, she said" dispute common in discrimination cases, where "the only direct evidence available very often centers on what the defendant allegedly said or did," and "the defendant will rarely admit to having said or done what is alleged . . . ." Danzer v. Norden Sys., Inc., 151 F.3d 50, 57 (2d Cir. 1998). See also, Fincher, 604 F.3d at 726 ("Whether . . . [an individual] made the remarks that [Plaintiff] imputes to him is a question of 'he said, she said' on which the court cannot, in the context of this case, take a side at the summary judgment stage.") (citing Simpri v. City of New York, No. 00-CV-6712, 2003 WL 23095554, at *8 (S.D.N.Y. Dec. 30, 2003)).

Finally, Defendants argue that Plaintiff's testimony is ambiguous, because he cannot recall the exact words that Kipp allegedly directed at him. (Defs.' Mem. at 13; Defs.' Reply

at 9-10.) However, this again goes to the issue of credibility. The fact that Plaintiff cannot remember the content of the alleged slurs may undermine the credibility of his claims, or rather it may be understandable if the jury believes his allegations of physical assault. But that is for a jury to decide.

* * *

Plaintiff has alleged that Defendant Kipp intentionally discriminated against him based on his race or ethnicity, in violation of his right to equal protection. In support of his claim, Plaintiff has offered testimony that Kipp used racial or ethnic slurs while subjecting him to excessive force. Defendants, on the other hand, deny both the use of slurs and the allegations of excessive force, although they do not move for summary judgment on the excessive force claim. The court finds that there are disputed questions of fact as to whether the alleged use of excessive force was racially motivated. Accordingly, the court denies Defendants' motion for summary judgment with respect to Plaintiff's equal protection claim against Kipp.

### B.     Conspiracy Claims under Sections 1983 and 1985

Plaintiff alleges that Defendants conspired to cover up the alleged use of excessive force against him. (Am. Compl. ¶ 14.) As evidence, he points to the "Medical Treatment of Prisoner" document, signed by both Kipp and Connick, indicating that Plaintiff banged his head into the wall causing his own injuries. (Pl.'s 56.1 at 6-7.) For the reasons explained below, the court finds that this raises a disputed issue of material fact for a jury.

A conspiracy claim must contain more than "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights." Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997) (internal quotation marks and citation omitted). The court notes that Plaintiff's excessive force claim is going forward and is not subject to Defendants' motion for summary

judgment. If a jury finds in favor of Plaintiff on his excessive force claim, then a reasonable juror could also find that the Medical Treatment of Prisoner document shows an agreement to falsify testimony and cover up an unconstitutional use of force. See Hill v. City of New York, No. 03-CV-1283 (ARR), 2005 WL 3591719, at *5 (E.D.N.Y. Dec. 30, 2005) ("Given that a jury may rationally infer that the defendant officers participated in a conspiracy to cover-up unconstitutional acts, summary judgment is not appropriate on plaintiff's conspiracy claim.").

Defendants argue that Plaintiff's conspiracy claims should nonetheless be dismissed according to the "intracorporate conspiracy doctrine," which provides that employees or agents of a single corporate entity, acting within the scope of their employment, are legally incapable of conspiring together. See id. at *6 (citing Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)). Although the Second Circuit has recognized the intracorporate conspiracy doctrine in the context of § 1985, see Herrmann, 576 F.2d at 459; Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir. 1976), it has not yet extended the doctrine to § 1983. See Hill, 2005 WL 3591719, at *6 ("[A] review of relevant case law suggests that [the Second Circuit] has not extended its application of the [intracorporate conspiracy] doctrine to conspiracy claims under § 1983."); Toliver v. Fischer, No. 12-CV-00077 (MAD) (ATB), 2015 WL 403133, at *21-22 (N.D.N.Y. Jan. 29, 2015) ("The Second Circuit has not yet validated the 'intracorporate conspiracy doctrine' in the context of a section 1983 action."). However, several district courts in this circuit have applied the doctrine to bar § 1983 conspiracy claims. See, e.g., Nassau Cty Emp. "L" v. County of Nassau, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004); Rahman v. Fischer, No. 10-CV-1496 (LEK) (TWD), 2012 WL 4492010, at *13 (N.D.N.Y.

Sept. 28, 2012). Regardless, the court does not need to determine whether the doctrine applies to bar Plaintiff's § 1983 claim, because both his § 1983 and § 1985 claims fit within the "personal stake" exception to the rule.

According to the personal stake exception, the intracorporate conspiracy doctrine does not apply to bar conspiracy claims against "individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." Bond v. Bd. of Educ. of the City of N.Y., No. 97-CV-1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999). In order for the exception to apply, "[t]he plaintiff must also allege that [the defendants] acted other than in the normal course of their corporate duties." Girard, 530 F.2d at 72 (internal quotations marks and citation omitted). Plaintiff has alleged facts which, if true, would show that Defendants acted in their own interest and outside the normal course of their duties for the NYPD. This is consistent with cases from this circuit in which district courts have found that the personal stake exception applied when police officers were alleged to have: covered up the use of excessive force, Hill, 2005 WL 3591719, at *6; engaged in race-based false arrests to improve their chances of promotions and benefits, Yeadon v. N.Y.C. Transit Auth., 719 F. Supp. 204, 212 (S.D.N.Y. 1989); and assaulted a prisoner in retaliation for his participation in a federal lawsuit, Medina v. Hunt, No. 05-CV-1460, 2008 WL 4426748, at *8 (N.D.N.Y. Sept. 25, 2008).

Because Plaintiff has alleged facts that fit the personal stakes exception, the intracorporate conspiracy doctrine will not bar Plaintiff's claims. Accordingly, the court denies summary judgment on Plaintiff's conspiracy claims under §§ 1983 and 1985.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment is GRANTED with respect to Plaintiff's equal protection claim against Officer Connick.

Defendants' motion is DENIED with respect to Plaintiff's equal protection claim against Officer Kipp. Defendants' motion is DENIED with respect to Plaintiff's §§ 1983 and 1985 conspiracy claims against both Connick and Kipp.

SO ORDERED.

Dated: Brooklyn, New York
September 25, 2015

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge