DIF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
IMRAN ALI,

                              Plaintiff,                          **MEMORANDUM & ORDER**

        -against-                                                 **11-CV-5297 (NGG) (VMS)**

POLICE OFFICER WILLIAM CONNICK and
SERGEANT DONALD KIPP

                              Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Imran Ali brings this action against two employees of the New York City Police

Department ("NYPD"): Police Officer William Connick ("Connick") and Sergeant Donald Kipp

("Kipp"). (Am. Compl. (Dkt. 7).) At this stage of the litigation, the only claims remaining are:

(1) use of excessive force in violation of 42 U.S.C. § 1983, against Kipp; (2) conspiracy in

violation of 42 U.S.C. §§ 1983 and 1985, against Connick and Kipp; and (3) violation of equal

protection in violation of 42 U.S.C. § 1983, against Kipp. (Joint Pre-Trial Order (Dkt. 55) at 2;

see also Summ. J. Mem. & Order ("Summ. J. Decision") (Dkt. 50); Stip. of Partial Voluntary

Dismissal & Discontinuance (Dkt. 34).) The parties filed a joint pre-trial order on

December 22, 2015. (Joint Pre-Trial Order.) An amended joint pre-trial order was filed on

May 19, 2016 (Am. Joint Pre-Trial Order ("JPTO") (Dkt. 72)), and entered by the court on

May 20, 2016 (May 20, 2016, Order). Trial is scheduled to begin on May 31, 2016.

Before the court are the parties' respective pre-trial motions in limine. (See Pls.' Mot. in

Lim. ("Pl.'s Mot.") (Dkt. 62); Defs.' Mot. in Lim. ("Defs.' Mot.") (Dkt. 63).) For the reasons

stated below, the court holds that Plaintiff's motion is GRANTED in part and DENIED in part,

and Defendants' motion is GRANTED in part, DENIED in part, and RESERVED in part.

1

## I.   BACKGROUND

The court assumes familiarity with the underlying facts and procedural history, but will briefly describe the aspects relevant to these motions. The court refers to its memorandum and order deciding Defendants' motion for partial summary judgment for additional factual background for further procedural detail. (See Summ. J. Decision at 1-4.)

Plaintiff was involved in a car accident on the morning of July 17, 2009. Plaintiff's car struck a parked vehicle at the intersection of 142nd Street and Lakewood Avenue in Queens, New York. (Id. at 1.) Defendant Connick arrived at the scene of the accident and placed Plaintiff under arrest. (Id. at 2.) There appears to be a factual dispute as to whether Plaintiff was intoxicated and whether he was driving his car when the accident occurred. (Compare Defs.' Mem. of Law in Opp'n to Pl.'s Mots. in Lim. ("Defs.' Opp'n") (Dkt. 64) at 2-4 (citing Plaintiff's deposition testimony), with Pl.'s Mot. at 4 (noting that "Ali was intoxicated [is] a fact conceded by Ali").)

Two non-party police officers subsequently took Plaintiff to the 103rd Precinct, while Connick remained at the scene. (Summ. J. Decision at 2.) At the police station, Plaintiff was brought to the desk of Defendant Kipp, and was asked certain pedigree information. (Id.) According to Plaintiff, Kipp "became belligerent . . . after we exchanged words." (Id.) He was then "brought, dragged, pushed" into a holding cell, where Kipp drove Plaintiff's head into the wall three or four times. (Id.) Plaintiff also states that Kipp directed slurs at him during this time, including comments about Plaintiff's "race and stuff" and "about Muslim[s]." (Id. at 2-3.) Kipp allegedly slammed Plaintiff's head into the cell gate and wall until he passed out from his injuries. (Id. at 2.) According to Kipp, he was at his desk when he heard bangs coming from the cell where Plaintiff was held, and from the monitor at his desk that displayed the cell, he saw

Plaintiff sitting on the ground. (See Mar. 7, 2013, Dep. of Donald Kipp (Decl. of James F. Desmond, Jr. (Dkt. 39), Ex. H (Dkt. 39-8)) at 85:9-25.) Emergency services were called and Plaintiff was transported to Queens Hospital Center. (Summ. J. Decision at 3.)

## II.    LEGAL STANDARD

### A.    Motion in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41.

### B.    General Rules of Admissibility

Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402. Thus, "unless an exception applies, all '[r]elevant evidence is admissible.'" United States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 402). Federal Rule of

Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Second Circuit has characterized this relevance standard as "very low." See White, 692 F.3d at 246 (quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)). Indeed, "[t]o be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010).

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Old Chief v. United States, 519 U.S. 172, 184 (1997). In short, Rule 403 requires "the district court [to] make a conscientious assessment of whether unfair prejudice substantially outweighs probative value" with regard to each piece of proffered evidence. Al-Moayad, 545 F.3d at 160 (quoting United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998) (per curium)).

## III. DISCUSSION

The court addresses in turn each of the parties' requests for admissions and exclusions.

### A. Plaintiff's Motion

Plaintiff seeks to preclude Defendants from introducing nineteen exhibits that "document Ali's intoxication at the time of the motor vehicle accident and that Ali was arrested for and

ultimately pled guilty to driving while intoxicated under New York's [Vehicle Traffic Law] 1192.1." (Pl.'s Mot. at 2.) The objected-to documents are:

- NYPD Highway District – IDTU Technician Tech Report ("JPTO Ex. A");

- Arresting Officer's Report ("JPTO Ex. B");

- Intoxicated Driver Examination ("JPTO Ex. D");

- NYPD Intoxicated Driver Examination Instruction Sheet ("JPTO Ex. E");

- NY State DMV Report of Refusal to Submit to Chemical Test ("JPTO Ex. F");

- Chemical Test Analysis ("JPTO Ex. G");

- Property Clerk's Invoice ("JPTO Ex. H");

- NYPD Arrest Report ("JPTO Ex. I");

- NYPD Complaint Report ("JPTO Ex. J");

- Criminal Court Complaint: Queens Criminal Court ("JPTO Ex. K");

- Intoxylizer – Alcohol Analyzer Report ("JPTO Ex. L");

- Certificate of Disposition ("JPTO Ex. M");

- Decision and Order from Suppression Hearing ("JPTO Ex. N");

- DMV Order of Suspension of Revocation ("JPTO Ex. O");

- DMV Order of Suspension Pending Prosecution ("JPTO Ex. P");

- Pre-Sentence Conditions (Criminal Court City of New York) ("JPTO Ex. Q");

- Accident Report ("JPTO Ex. S");

- IAB DVD – Surveillance Video from "Underground Nightclub" ("JPTO Ex. U"); and

- Transcript of Plaintiff's Guilty Plea ("JPTO Ex. V").

(Id.) Plaintiff argues that documents relating to his intoxication would cause undue prejudice (id. at 3-5), and documents relating to the violation arising out of the underlying accident are

5

irrelevant and unduly prejudicial (id. at 5). Plaintiff further asserts that certain of the documents are inadmissible hearsay. (Id.)

### 1. Intoxication

Plaintiff moves to preclude from trial documents evidencing his intoxication. (Id. at 4.) Plaintiff argues that because he concedes that he was intoxicated, submitting ten documents to prove that fact "would be cumulative and tend to confuse the jury" and would only serve to "disparage Ali in the eyes of the jury." (Id. at 4-5.) Defendants counter that Plaintiff had denied that he was intoxicated in numerous prior statements, including in his deposition testimony. (Defs.' Opp'n at 2-3.) Defendants contend that his intoxication—and the extent of his intoxication—are "highly probative of Plaintiff's memory and perception of the incident, as well as his credibility." (Id. at 2.)

To the extent that Plaintiff argues that his intoxication is irrelevant to this case (see Pl.'s Mot. at 5), the court disagrees. As Plaintiff himself notes in his motion in limine, Defendants may argue at trial that "Ali's injuries were sustained as a result of his intoxication." (Id. at 4.) Whether Plaintiff had been drinking on the night of the accident and the extent to which he had been drinking thus are plainly relevant. See Kokoska v. Carroll, No. 12-CV-1111 (WIG), 2015 WL 1004303, at *3 (D. Conn. Mar. 6, 2015) (finding Plaintiff's alleged intoxication probative in an excessive force case because "it may have influenced [the plaintiff's] actions and behavior").

Defendants are also correct that the level of Plaintiff's supposed drunkenness is probative of his memory and perception of the events on the night in question. Courts have long held that "[i]t is, of course, within the proper scope of cross-examination to determine whether a witness was under the influence of drugs or narcotics or alcohol at the time of observation of events in dispute . . . ." United States v. DiPaolo, 804 F.2d 225, 229 (2d Cir. 1986). Thus, evidence of

intoxication may be used to impeach the witness's ability to observe and recall critical events. Nibbs v. Goulart, 822 F. Supp. 2d 339, 346 (S.D.N.Y. 2011); see also Kokoska, 2015 WL 1004303, at *3. Defendants are therefore permitted to raise the issue of Plaintiff's drinking on cross-examination to test Plaintiff's credibility.

Having concluded that evidence of Plaintiff's drinking is relevant and probative, the court next addresses arguments that documents concerning Plaintiff's intoxication should nonetheless be excluded. As an initial matter, it is unclear whether Plaintiff's intoxication is in dispute. In his motion in limine, Plaintiff asserts that he concedes that he was intoxicated on the night of the accident. (Pl.'s Mot. at 1, 5.) However, Defendants correctly point out that Plaintiff has testified to the contrary on multiple occasions. (Defs.' Opp'n at 2-3.) The court also notes that as recently as during briefing on Defendants' partial motion for summary judgment, Plaintiff maintained that "he was not drunk." (Pl.'s Rule 56.1 Statement (Dkt. 41) at 2.) The court is not aware of any stipulation or concession since the summary judgment phase of this case that altered Plaintiff's position. In any event, even if the parties had stipulated to the fact of Plaintiff's intoxication, the stipulation would not be grounds to preclude the Defense from offering evidence demonstrating the same fact. Defendants are entitled to submit to the jury evidence that shows Plaintiff was intoxicated and place this fact in the appropriate context as part of a narrative to prove their case. As the Supreme Court noted, "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." Old Chief, 519 U.S. at 189.

This is not to say, however, that Defendants have unfettered leave to present the jury with all the evidence they desire on the issue of intoxication. Defendants may not introduce evidence of Plaintiff's drunkenness if "unfair prejudice substantially outweighs probative value."

Salameh, 152 F.3d at 110. This is the case for JPTO Exs. F, G, L, and N: documents indicating that Plaintiff refused a blood alcohol test. Especially if intoxication is contested at trial, there is a danger that a jury would view the refusal as an admission or that Plaintiff had something to hide. Defendants have not argued that the refusal to submit to a blood alcohol test, in and of itself, is probative or relevant, and the information in these exhibits tending to show Plaintiff was intoxicated are found elsewhere. (Compare, e.g., JPTO Ex. F ("strong odor of alcohol, bloodshot eyes & [Ali] stated he was drunk"), with JPTO Ex. D ("unsteady on feet, smell of alcohol, bloodshot eyes & [Ali] stated he was drunk").) The probative value of these blood alcohol test documents—as "calculated by comparing evidentiary alternatives"— is thus low, if not non-existent. Old Chief, 519 U.S. at 184. JPTO Exs. F, G, L, and N, and any other document or testimony reflecting Plaintiff's refusal to take a blood alcohol test are inadmissible.

The court will not exclude any other proposed exhibits at this stage. "Where possible, a party should be allowed 'to prove its case by evidence of its own choice.'" Int'l Bus. Machines Corp. v. BGC Partners, Inc., No. 10-CV-128 (PAC), 2013 WL 1775437, at *8 (S.D.N.Y. Apr. 25, 2013) (quoting Old Chief, 519 U.S. at 186). Defendants propose at least seven exhibits (not including the blood alcohol test documents) on the issue of intoxication, and Plaintiff argues that they would be "cumulative and tend to confuse the jury." (Pl.'s Mot. at 5.) Plaintiff may well be right that if Defendants introduced all these exhibits at trial, in addition to eliciting testimony on intoxication from other witnesses such as Defendant Connick, the author of many of the objected-to exhibits, the evidence would become cumulative sooner rather than later. See Fed. R. Evid. 403; United States v. Jamil, 707 F.2d 638, 643 (2d Cir. 1983) ("Evidence is cumulative when it replicates other admitted evidence."). However, the court cannot predict when Defendants' evidence will become cumulative because the court does not know what

8

evidence Defendants will present. Should Defendants cross the line at trial, Plaintiff should renew his challenge then.

Accordingly, the court finds that evidence of Plaintiff's intoxication is admissible, with the exception of JPTO Exs. F, G, L, and N, and any other documents or testimony reflecting Plaintiff's refusal to submit to a blood alcohol test.

### 2. Traffic Violation

Plaintiff also moves to exclude documents relating to his violation of New York's Vehicle Traffic Law 1192.1, for driving while intoxicated. (Pl.'s Mot. at 5-6.) This traffic violation arose out of the events underlying this action. (See id.) Plaintiff maintains that these documents are either irrelevant or more prejudicial than probative. (Id.) He additionally argues that evidence of his guilty plea to the violation is inadmissible under FRE 609(a). (Id.) Defendants respond that they do not seek to admit evidence of his conviction pursuant to FRE 609(a). (Defs.' Opp'n at 4.) Instead, Defendants argue that they are admissible to test Plaintiff's credibility because Plaintiff testified in the past that he was not the driver of the car when the accident occurred, but by pleading guilty to a charge of driving while intoxicated, he necessarily admitted he was the driver. (Id.)

The court agrees that FRE 609 is inapplicable. Rule 609(a)(1) states that evidence of a conviction for a crime punishable for more than one year must be admitted, subject to FRE 403. Fed. R. Evid. 609(a)(1). Rule 609(a)(2) states that evidence of a conviction for which a dishonest act or false statement is an element of the crime must also be admitted. Fed. R. Evid. 609(a)(2). Because the traffic violation to which Plaintiff pleaded guilty was not punishable by more than one-year imprisonment, and because neither a dishonest act nor a false statement is an element of the violation, the Rule 609 is inapposite.

9

The court additionally finds that Plaintiff's guilty plea to a violation arising out of the accident at issue in this civil action is irrelevant to whether Defendants violated Plaintiff's constitutional rights after he was taken into custody. Defendants appear to agree, and instead argue that evidence of the violation is admissible to test Plaintiff's credibility. (Defs.' Opp'n at 4.) The court agrees that Plaintiff's seemingly contradictory positions on whether he was the driver of the car on the night in question is probative of his credibility in the eyes of the jury. However, to be admissible, evidence of the violation must still be more probative than prejudicial under Rule 403. Nibbs, 822 F. Supp. 2d at 344. The court recognizes that references to Plaintiff's guilty plea for driving while intoxicated may cast him in a negative light. "The plain fact of the matter is jurors don't tend to like people who drive drunk, and their view of [the guilty plea] might affect their ability to view fairly the evidence in this case." United States v. Landry, 631 F.3d 597, 604 (1st Cir. 2011) (citation and internal quotation marks omitted). But unlike Stephen v. Hanley, No. 03-CV-6226 (KAM) (LB), 2009 WL 1471180 (E.D.N.Y. May 21, 2009), a case upon which Plaintiff relies, Defendants do not seek to impeach Plaintiff's credibility using the simple fact of the guilty plea. Rather, Defendants seek to use documents relating to the guilty plea to contradict statements Plaintiff made during the course of these proceedings. There was no such question of inconsistent statements in Stephen. The court therefore concludes that the resultant prejudice is outweighed by the probative value provided as to his credibility.

Accordingly, the court finds that evidence of Plaintiff's underlying violation is admissible for impeachment purposes.

3.  Hearsay

Plaintiff also argues in a cursory manner that certain of the documents he objects to are inadmissible hearsay. (Pl.'s Mot. at 5.) In their opposition, Defendants assert that the seventeen documents Plaintiff seek to exclude as hearsay fall within the exceptions to the rule against hearsay because "they are NYPD business records made and kept in the ordinary course of NYPD business." (Defs.' Opp'n at 4-5 (citing Fed. R. Evid. 803(6)).) Defendants also argue that even if certain documents are hearsay, they are admissible for impeachment purposes. (Id. at 5.)

The one case Plaintiff cites in support of his argument is inapposite. (Id.) The plaintiff in Wilson v. Roberson, No. 92-CV-2709 (KMW), 1996 WL 63053 (S.D.N.Y. Feb. 14, 1996), moved in limine to exclude certain memo book entries and complaint reports on hearsay grounds. Id. at *5. The defendants opposed the exclusion only if the plaintiff testified at trial to a specific fact. Id. at *5. The court then granted the plaintiff's motion but noted that it would reconsider its ruling if the plaintiff did so testify. Id. The court, for all intents and purposes, granted the motion as unopposed. See id.

Plaintiff has not addressed the documents individually to explain why each is objectionable and why exceptions to the hearsay rule do not apply. It is also unknown at this stage which documents Defendants intend to introduce and for what purpose—i.e., whether to prove a fact or for impeachment. The burden to establish that evidence is inadmissible for any purpose, and thus excludable on a motion in limine, is on the movant. United States v. Pugh, --- F. Supp. 3d ---, No. 15-CR-116 (NGG), 2016 WL 627347, at *2 (E.D.N.Y. Feb. 12, 2016). Plaintiff has failed to carry this burden. Accordingly, the court denies Plaintiff's

motion to exclude documents as inadmissible hearsay. Plaintiff may renew his application at trial.

## B. Defendants' Motion

Defendants move in limine to preclude Plaintiff from offering:

- Testimony from any of Plaintiff's treating physicians;

- Evidence relating to a Diffusor Tensor Imaging exam Plaintiff undertook;

- Testimony from two named witness (Alex Rodriguez and Kavita Samaroo), and certain unnamed witnesses from Jamaica Medical Center and the NYPD Internal Affairs Bureau ("IAB");

- Evidence relating to Defendants' disciplinary history, lawsuits, and personnel files;

- Defendants' memo book entries, command logs, medical treatment of prisoner forms, IAB reports, and certain photographs;

- Evidence relating to the NYPD Patrol Guide;

- Any reference of counsel for Defendants as "City Attorneys" or suggesting that the City of New York may indemnify Defendants; and

- Any request for a specific amount of damages.

(See generally Defs.' Mot.) Plaintiff opposes only a portion of these requests. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. in Lim. ("Pl.'s Opp'n") (Dkt. 67) at 2-3.)

### 1. Uncontested Issues

The court first disposes of the portions of Defendants' motion in limine that are not in dispute. In his opposition, Plaintiff states that he does not oppose the exclusion of evidence of Defendants' disciplinary histories, lawsuits, and personnel files, testimony of unidentified healthcare providers from Jamaica Medical Center or members of the NYPD IAB, the NYPD Patrol Guide, references to Corporation Counsel as "City Attorneys," suggestions that the City

may indemnify Defendants, or requests for a specific dollar amount of damages from the jury. (Id.) Accordingly, Defendants' motion as to these requests is granted.

### 2. Plaintiff's Treating Physicians

Defendants seek to preclude from trial the testimony of Plaintiff's five treating physicians: Dr. David L. Cohen, Dr. Igor Cohen, Dr. Gregory Lawler, Dr. Thugmann, and Dr. Ahid Elfiky. (Defs.' Mot. at 2-4.) Defendants argue that Plaintiff failed to provide the disclosures required by Federal Rule of Civil Procedure 26 for expert witnesses, and thus should be prevented from offering these individuals at trial. (Id.) Specific to Dr. Igor Cohen, Defendants also dispute whether he qualifies as Plaintiff's treating physician. (Id. at 3-4.) Plaintiff responds that "treating physicians are not expert witnesses," and therefore they are exempt from the disclosure requirements of Rule 26. (Pl.'s Opp'n at 3-4.) According to Plaintiff, the treating physicians will be testifying as fact witnesses in their capacities as Plaintiff's treating physicians. (Id.) The parties agree that Plaintiff has neither named any of the treating physicians as experts under Rule 26 nor satisfied the corresponding disclosure requirements. The issue before the court then, is whether the five treating physicians can nonetheless testify—and the scope of their testimony if admissible at all—as fact witnesses.

#### i. Treating Physicians as Fact Witnesses

Courts in this circuit have held that treating physicians may testify as fact, rather than expert, witnesses. See, e.g., Puglisi v. Town of Hempstead Sanitary Dist. No. 2, No. 11-CV-0445 (PKC), 2013 WL 4046263, at *6 (E.D.N.Y. Aug. 8, 2013); Zanowic v. Ashcroft, No. 97-CV-5292 (JGK) (HBP), 2002 WL 373229, at *2 (S.D.N.Y. Mar. 8, 2002). Even without being declared an expert under Rule 26, treating physicians "may testify as to facts acquired and opinions formed during [their] personal consultation . . . ." Puglisi, 2013

13

WL 4046263, at *6 (emphasis in original). Opinions formed during consultation "are considered an explanation of treatment." Turner v. Delta Air Lines, Inc., No. 06-CV-1010, 2008 WL 222559 (NG) (CLP), at *1 (E.D.N.Y. Jan. 25, 2008). Specifically, a treating physician who testifies as a fact witness can opine on "causation, severity, disability, permanency and future impairments" as part of the doctor's explanation of treatment. Puglisi, 2013 WL 4046263, at *6 (quoting Williams v. Regus Mgmt. Grp., No. 10-CV-8987 (JMF), 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012)).

However, the testimony of a treating physician who has not been declared an expert under Rule 26 or complied with its disclosure requirements is not without bounds. It is confined to "information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician [and] limited to the facts in Plaintiff's course of treatment." Spencer v. Int'l Shoppes, Inc., No. 06-CV-2637 (AKT), 2011 WL 4383046, at *3-4 (E.D.N.Y. Sept. 20, 2011). It must not include testimony "with regard to another physician's records, opinion or recommendations . . . because this information cannot be characterized as being within the personal knowledge of [the treating physician]." Motta v. First Unum Life Ins. Co., No. 09-CV-3674 (JS) (AKT), 2011 WL 4374544, at *4 (E.D.N.Y. Sept. 19, 2011); see also Spencer, 2011 WL 4383046, at *4 ("The treating physician may not introduce information provided by other physicians to whom the Plaintiff may have been referred nor may the doctor present any medical reports received from other physicians regarding the Plaintiff or opine on any information provided by another doctor."). Equally off limits is "information acquired during preparations for [] testimony at trial." Puglisi, 2013 WL 4046263, at *6. "[T]he key to what a treating physician can testify to without being declared an expert is based on his[/her] personal knowledge from consultation, examination and treatment of the Plaintiff, 'not from

14

information acquired from outside sources.'" Motta, 2011 WL 4374544, at *3 (quoting Mangla v. Univ. of Rochester, 168 F.R.D. 137, 139 (W.D.N.Y. 1996)) (emphasis in original).

Defendants nonetheless argue that treating physicians must be declared as experts and satisfy the disclosure requirements of either Rule 26(a)(2)(B) or (C) in order to testify at trial. (Defs.' Mot. at 2-4.) As an initial matter, it is clear that treating physicians are not subject to the expert report requirement of Rule 26(a)(2)(B). Rule 26(a)(2)(B) provides that the disclosure of an expert "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The Advisory Committee's Notes make explicit, however, that "[a] treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." Fed. R. Civ. P. 26(a)(2) advisory committee's note to 1993 amendment; see also Spencer, 2011 WL 4383046, at *2; Zanowic, 2002 WL 373229, at *2 ("It is well settled that a treating physician is not subject to the disclosure obligations set forth in Fed. R. Civ. P. 26(a)(2)(B)."). It is therefore unnecessary for treating physicians to provide Rule 26(a)(2)(B) expert reports in order to testify, even as expert witnesses.

A closer question is whether the 2010 addition of the new disclosure requirement of Rule 26(a)(2)(C) affected how and when treating physicians may be called at trial. Rule 26(a)(2)(C) states that, "if the [expert] witness is not required to provide a written report, [the Rule 26 disclosure] must state (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Prior to the 2010 amendment, no written disclosures were required for treating physicians. The

Advisory Committee's Notes explain that, "[t]his amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment. It goes on to list physicians as a common example of witnesses that do not need to provide an expert report under subdivision (B), but may still testify as a fact witness or provide expert testimony. Id.

Some courts appear to conclude that Rule 26 now requires all treating physicians to provide a Rule 26(a)(2)(C) summary disclosure before they can testify. See, e.g., Ziegenfus v. John Veriha Trucking, No. 10-CV-5946 (RJS), 2012 WL 1075841, at *7 (S.D.N.Y. Mar. 28, 2012) (finding a treating physician must "at a minimum, provide Defendants with a [Rule 26(a)(2)(C)] summary of his opinions about Plaintiff's medical condition"); Barack v. Am. Honda Motor Co., 293 F.R.D. 106, 108 (D. Conn. 2013) (same). Others maintain that "[n]o expert report [pursuant to Rule 26(a)(2)(B)] or summary of testimony [pursuant to Rule 26(a)(2)(C)] is required for [a treating physician] to testify as a fact witness." Puglisi, 2013 WL 4046263, at *6 (emphasis in original); see also Spencer, 2011 WL 4383046, at*2-3; Motta, 2011 WL 4374544, at *4.

As noted previously, testimony of treating physicians as to facts acquired and opinions formed during consultation are considered factual and not expert testimony, and thus fall without the reach of Rule 26. Nothing in the amended Rule or the accompany notes of the Advisory Committee suggests an enlargement of the scope Rule 26 to now encompass facts acquired and opinions formed during treatment. Instead, it was amended to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note

to 2010 amendment. While the note is silent as to the precise tension, it is likely a reference to the fact that prior to the 2010 amendment, courts either limited a treating physician's testimony to facts acquired or opinions formed during treatment, see Geary v. Fancy, No. 12-CV-796W(F), 2016 WL 1252768, at *2 (W.D.N.Y. Mar. 31, 2016), or required a treating physician to provide a full Rule 26(a)(2)(B) expert report if the testimony included any information gained outside of consultation, such as another doctor's records or recommendations, see Lewis v. Triborough Bridge, No. 97-CV-607 (PKL), 2001 WL 21256, at *1 (S.D.N.Y. Jan. 9, 2001). In other words, courts either limited a treating physician's testimony to facts based on personal knowledge acquired during treatment, or required a full expert report if testimony exceeded that limited scope, even if the treating physician was not "retained or specially employed to provide expert testimony in the case" within the meaning of Rule 26(a)(2)(B). It is understandable why, in the latter situation, courts have required a full report "even from witnesses exempted from the report requirement." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment. Courts operated with a limited toolbox. It was either a full expert report, or none at all. Where a treating physician's testimony includes information acquired from sources other than personal knowledge, the opposing party would have no notice of the potential testimony absent a written report, "thus creating the possibility of unfair surprise and delay." Geary, 2016 WL 1252768, at *2. Such dangers are obviated where testimony is limited to facts acquired and opinions formed during consultation, because, typically, the opposing party would have received as part of discovery the medical records pertaining to the doctor's treatment, thus providing sufficient notice. Id. The introduction of Rule 26(a)(2)(C) summary of opinions represent a middle ground to the all-or-nothing approach of Rule 26 disclosures previously facing parties and courts.

17

The court thus concludes that treating physician testimony can be of three different types: (1) testimony limited to facts acquired and opinions formed during consultation; (2) testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of litigation; and (3) testimony where circumstances suggest the doctor was "retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The first category is outside the purview of Rule 26 and is considered factual testimony. The second falls under the domain of Rule 26(a)(2)(C). The third is governed by Rule 26(a)(2)(B). Here, the parties agree that the five treating physicians are not experts, so these potential witnesses must only provide testimony falling within the first category.

ii. Dr. Igor Cohen

As to one of the treating physicians, Dr. Igor Cohen ("Dr. Cohen"), Defendants argue that he was not Plaintiff's treating physician at all. (Defs. Mot. at 3-4.) If Dr. Cohen was not Plaintiff's treating physician, then his testimony must be excluded as a result of Plaintiff's failure to properly disclose him under Rule 26. While the law on who qualifies as a "treating physician" is not well defined, the critical inquiry centers around why the physician was retained: whether to treat the Plaintiff or to provide expert testimony at trial. See Evans v. United States, 978 F. Supp. 2d 148, 153 (E.D.N.Y. 2013) (citing Zanowic, 2002 WL 373229, at *2). Courts consider factors such as why the plaintiff saw the doctor, the reason for the referral to the doctor if referred, how often the doctor was consulted, whether medication was prescribed, the time spent treating the patient compared to providing testimony, and whether there is a continuing relationship between doctor and patient. Zanowic, 2002 WL 373229, at *2-3. Here, the only reasons Defendants put forth in support of their argument that Dr. Cohen was not Plaintiff's treating physician are that Dr. Cohen treated Plaintiff twice in the seven years since the incident,

18

and that the first consultation occurred four years after the incident. (Defs.' Mot. at 3.) It is unclear from the parties' submissions the substance of Dr. Cohen's consultation, whether Dr. Cohen was referred by another of Plaintiff's physician, if medication was prescribed, and why the consultations started years after the incident and ended after two sessions. These uncertainties make it impossible for the court to determine on the papers whether Dr. Cohen was Plaintiff's treating physician. The court therefore reserves ruling until trial.

### 3. Diffusor Tensor Imaging Exam

Defendants next seek to preclude Plaintiff from offering any reports or opinions resulting from a Diffusor Tensor Imaging ("DTI") exam undertaken by Plaintiff in 2013. (Defs.' Mot. at 4-5.) Defendants argue that without a properly disclosed expert witness, no one can testify to "knowledge of DTI testing and its relationship to traumatic brain injury." (Id.) Alternatively, Defendants argue that Plaintiff has not offered any evidence tending to show the reliability of DTI under Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993). (Id. at 5.) Plaintiff contends that he had previously disclosed that one of his treating physicians, Dr. Gregory Lawler ("Dr. Lawler"), would testify to the results of the DTI exam that he performed. (Pl.'s Opp'n at 6-7.) Plaintiff also argues that "DTI testing has been recognized as authoritative and reliable in many District Courts around the country." (Id. at 7-8.)

Under the scope of the non-expert treating physician testimony previously delineated, treating physicians may testify "as to facts acquired and opinions formed during [] personal consultation . . . ." Puglisi, 2013 WL 4046263, at *6 (emphasis in original). It follows that, theoretically, Dr. Lawler would be permitted to testify as to the fact that he conducted a DTI test on Plaintiff, and the conclusions that he drew and opinions that he formed based on the DTI exam results at the time of consultation. However, as a non-expert witness, his testimony cannot

rely upon "scientific, technical, or other specialized knowledge" gained outside of his personal consultation with Plaintiff. In re World Trade Ctr. Lower Manhattan Disaster Site Litig., No. 21-MC-102, 2014 WL 5757713, at *3-4 (S.D.N.Y. Nov. 5, 2014). Dr. Lawler thus cannot testify as to the general theory of the science and medicine behind DTI exams and its relationship with traumatic brain injury. To allow a non-expert to provide such expert testimony would subvert the disclosure requirements of Rule 26.

The question then, is whether allowing Dr. Lawler to testify to the DTI exam results without any expert explanation would confuse the jury or cause undue prejudice to Defendants under FRE 403. Cf. United States v. Mejia, 545 F.3d 179, 189 (2d Cir. 2008) ("[E]xpert testimony is called for when the 'untrained layman' would be unable intelligently to determine 'the particular issue' in the absence of guidance from an expert." (quoting Fed. R. Evid. 702 advisory committee's note to 1972 proposed rule)). DTI testing has only gained medical acceptance in recent years. See Ruppel v. Kucanin, No. 3:08-CV-591, 2011 WL 2470621, at*7 (N.D. Ind. June 20, 2011) ("DTI is a relatively new technology [that] is gaining general acceptance as a method for detecting [traumatic brain injury]."). Its reliability is challenged by Defendants (Defs.' Opp'n at 5), and Plaintiff does not have any expert witness who can establish its reliability. Furthermore, as a medical doctor, the jury may already view any testimony from Dr. Lawler with an aura of authority. See In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1267, 1283 (E.D.N.Y. 1985). If Dr. Lawler is permitted to testify to the results of the DTI exam, the jury may be confused as to the connection between the DTI results and potential traumatic brain injury or the weight they should afford such testimony, or they may give the testimony undue weight because of Dr. Lawler's status as a physician. On balance, the court

finds that the dangers of juror confusion and undue prejudice outweigh any probative value of testimony regarding the DTI exam.

In his opposition, Plaintiff argues that courts generally permit treating physicians to testify as to radiology reports, even those of other physicians. (Pl.'s Opp'n at 7.) The cases he cites are inapposite, however, because the treating physicians in those cases were all properly designated as expert witnesses. See, e.g., Shamanskaya v. Ma, No. 07-CV-1974 (RRM), 2009 WL 2230709, at *6 (E.D.N.Y. July 24, 2009); Williams v. Elzy, No. 00-CV-5382 (HBP), 2003 WL 22208349, at *5 (S.D.N.Y. Sept. 23, 2003). Dr. Lawler is not an expert. Plaintiff made the strategic decision not to designate any expert in this case. This issue with the DTI exam could easily have been resolved if Plaintiff had designated Dr. Lawler as an expert treating physician under Rule 26. Dr. Lawler would only have been subject to the "considerably less extensive" summary of opinions disclosure requirement of Rule 26(a)(2)(C), rather than a full expert report under Rule 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment. Plaintiff did not do so, and must now live with the consequences.

To be clear, Dr. Lawler may still testify to the fact that he examined Plaintiff, performed tests, including but not limited to an MRI exam, which Defendants have not contested, and that based on his examination, he diagnosed Plaintiff (presumably) with traumatic brain injury. He may not, however, testify to the results of the DTI exam. Accordingly, Defendants' motion to exclude any evidence of the DTI exam is granted.

        4.     Alex Rodriguez

Defendants also move to preclude Plaintiff from calling witness Alex Rodriguez ("Rodriguez") at trial. (Defs.' Mot. at 5.) Defendants argue that because Plaintiff failed to provide any contact information for Rodriguez, he has failed to comply with Rule 26(a) and the

testimony should be excluded. (Id. at 5-6.) Defendants also assert that they would be substantially prejudiced if Rodriguez were found at the eleventh hour on the eve of trial, a witness Defendants have never had a chance to depose. (Id.) Plaintiff maintains that he does not intend to call Rodriguez, and his failure to provide the requisite contact information is the result of Plaintiff's own inability to locate Rodriguez. (Pl.'s Opp'n at 9.) At this time, Plaintiff only seeks to reserve the right to call Rodriguez in the event that he can be located. (Id.)

Rule 26(a)(1) and (3) require that parties disclose the identity of, and contact information for, potential witnesses. Failure to comply with its dictates can result in the exclusion of the testimony as a sanction under Rule 37(c). See Virgin Enters. Ltd. v. Am. Longevity, No. 99-CV-9584 (CSH), 2001 WL 34314729, at*2 (S.D.N.Y. Mar. 1, 2001). In determining whether to exclude trial testimony, courts consider "(1) the surprise or prejudice suffered by the moving party; (2) the ability of that party to cure the prejudice; (3) whether waiver of the rule against calling unlisted witnesses is appropriate; (4) bad faith or willfulness in failing to comply . . . ." Id. However, "courts recognize that preclusion is a drastic remedy appropriate only in rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." Jenkins v. City of New York, No. 96-CV-4421 (LMM), 2004 WL 2624872, at*2 (S.D.N.Y. Nov. 17, 2004) (citations and internal quotation marks omitted). Defendants likely are correct that they would be prejudiced if Rodriguez suddenly appeared to testify on Plaintiff's behalf. Rodriguez is alleged to have been in the car with Plaintiff when Plaintiff's car struck the parked vehicle, the accident that precipitated the events giving rise to this case. If he unexpectedly turned up at the last minute, the court may need to postpone trial to give Defendants an opportunity to depose Rodriguez and to seek rebuttal evidence. See, e.g., Baptiste v. Rohn, No. 13-CV-104, 2016 WL 1060237, at*5 (D.V.I.

22

Mar. 15, 2016) (excluding two witnesses whose contact information were not disclosed until seventeen days before trial).

Nevertheless, preclusion is a drastic measure only appropriate where "a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules." Jenkins, 2004 WL 2624872, at*2. Plaintiff notes that he does not know where Rodriguez is, and does not intend to call on him to testify. The court cannot assess whether there is any bad faith until Plaintiff actually comes forth with new information about Rodriguez—and how that information came about—and states his intention to call him to testify. The court therefore concludes that the most prudent path forward is to reserve decision on Defendant's motion to preclude Rodriguez until it becomes an issue and the court is in possession of all the necessary information. Cf. Morgutia-Johnson v. Hustedde, No. 14-CV-127 (LJO), 2015 WL 3507130, at *6 (E.D. Cal. June 3, 2015) (denying as moot motion to preclude plaintiff's witnesses for which contact information has not been properly disclosed because plaintiff has not been able to find them).

     5.    Kavita Samaroo

Next, Defendants request that the court preclude witness Kavita Samaroo ("Samaroo") from testifying. (Defs.' Mot. at 6.) Defendants reason that Plaintiff's parents "will testify to Plaintiff's damages," and "[t]o allow Ms. Samaroo to testify on the same topic would be cumulative, a waste of time, and would not make any fact at issue more or less likely." (Id.) Plaintiff argues that it would be premature to make any judgments on whether the testimony of potential witnesses would be cumulative or a waste of time. (Pl.'s Opp'n at 8-9.) The court agrees.

"It would ordinarily be inappropriate for any party to call two witnesses to offer the same testimony because such testimony would be cumulative. However, at this time it is impossible to

know whether [one witness's] testimony will be cumulative of [another witness's] because neither has testified." Giladi v. Strauch, No. 94-CV-3976 (RMB) (HBP), 2007 WL 415365, at *10 (S.D.N.Y. Feb. 6, 2007); see also Jamil, 707 F.2d at 643 ("[W]hen the trial has not yet commenced and no evidence has yet been put before a jury, it is premature to conclude that this evidence is cumulative."). The issue of "damages" is expansive, and Defendants have not yet indicated that Plaintiff's parents and Samaroo would testify to the same facts or opinions, either by pointing to deposition testimony or other evidence. Defendants then, are asking the court to blindly cap the number of witnesses that Plaintiff should be permitted to call to testify on the topics of damages and arbitrarily select Plaintiff's parents as more appropriate witnesses than Samaroo. This, the court will not do. If it turns out at trial that the testimony of Plaintiff's parents and Samaroo is cumulative, Defendants may raise their objection then. At this time, however, Defendants' motion to preclude Samaroo from testifying is denied.

6.     Memo Book Entries, Command Logs, Medical Treatment of Prisoner Form, Internal Affairs Bureau Documents, and Photographs

Lastly, Defendants seek to exclude wholesale Defendants' memo book entries, command logs, a medical treatment prisoner form, Internal Affairs Bureau documents, and certain photographs taken of the police precinct where the alleged excessive force took place. (Defs.' Mot. at 13-15.) Defendants claim in a conclusory manner that the memo books contain little relevant information and that any relevant information is contained in other unidentified proposed exhibits for trial. (Id. at 13.) Defendants also argue that Plaintiff's sole purpose for introducing the memo books would be "to cause undue embarrassment and harassment to defendants for their entries or alleged omissions." (Id. at 13-14.) Defendants failed, however, to include any of the disputed memo book entries with their moving papers, or even summarize for the court their objectionable content. The court has no idea what relevant information may be

contained in the memo books, much less what other potential trial exhibits could serve as alternatives. The court also does not know how introduction of the memo books could cause Defendants "undue embarrassment and harassment" or why any "alleged omissions" would not be relevant in this case.

As to the other documents, Defendants claim that the only relevant information contained in the command logs, IAB documents, and medical treatment of prisoner form are "duplicative of information that plaintiff cannot dispute—namely, that on July 17, 2009, Plaintiff was transported in an ambulance [] from the vicinity of the 103rd Precinct in Queens, New York to Jamaica Hospital, and later diagnosed with and treated for a head injury." (Id. at 14.) Defendants also claim that there are some "handwritten statements" contained in the medical treatment of prisoner form that is hearsay. (Id. at 15.) As to the photographs, Defendants argue that they were taken after the precinct had been renovated, and so do not accurately depict the precinct at the time of the incident. (Id.) Defendants also broadly charge that all of the documents are inadmissible hearsay under Rule 802 and lack authentication under Rule 901. Again, without the benefit of actual documents, the court is unable to assess their admissibility. Plaintiff also points out—and the court is unable to reconcile at this juncture—the fact that Defendants themselves listed the command logs and the medical treatment of prisoner form as potential Defense exhibits. (See Pl.'s Opp'n at 10; JPTO at 16, 18.)

It is Defendants' burden to establish evidence is inadmissible for any purpose, and they have failed to meet their burden. See Pugh, 2016 WL 627347, at *2. Accordingly, Defendants' motion as to these documents and photographs is denied. See Viada v. Osaka Health Spa, Inc., No. 04-CV-2744 (VM) (KNF), 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005) (denying

"vague" motions in limine). Defendants are invited to make more particularized objections at trial.

## IV.   CONCLUSION

For the reasons stated above, the court finds that:

- Plaintiff's motion to preclude evidence of his intoxication is GRANTED in part and DENIED in part. (See infra Part III.A.1 & Part III.A.3.) Specifically, evidence of Plaintiff's intoxication is admissible, but JPTO Exs. F, G, L, and N, and any other documents or testimony reflecting Plaintiff's refusal to submit to a blood alcohol test are inadmissible.

- Plaintiff's motion to preclude evidence of his guilty plea to his traffic violation is DENIED. (See infra Part III.A.2 & Part III.A.3.)

- Defendants' motion to preclude evidence of Defendants' disciplinary histories, lawsuits, and personnel files, testimony of unidentified healthcare providers from Jamaica Medical Center or members of the NYPD Internal Affairs Bureau, the NYPD Patrol Guide, references to Corporation Counsel as "City Attorneys," suggestions that City of New York may indemnify Defendants, or requests for a specific dollar amount of damages from the jury is GRANTED. (See infra Part III.B.1.)

- Defendants' motion to preclude Plaintiff's treating physicians from testifying is GRANTED in part, DENIED in part, and RESERVED in part. (See infra Part III.B.2.) Specifically, Plaintiff's treating physicians may not testify as expert witnesses, but they are permitted to testify as fact witnesses. The court reserves judgment on whether Dr. Igor Cohen qualifies as Plaintiff's treating physician.

- Defendants' motion to preclude evidence of Plaintiff's Diffusor Tensor Imaging Exam is GRANTED. (See infra Part III.B.3.)

- Defendants' motion to preclude Alex Rodriguez from testifying is RESERVED. (See infra Part III.B.4.)

- Defendants' motion to preclude Kavita Samaroo from testifying is DENIED. (See infra Part III.B.5.)

- Defendants' motion to preclude Defendants' memo book entries, command logs, a medical treatment prisoner form, Internal Affairs Bureau documents, and certain photographs is DENIED. (See infra Part III.B.6.)

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      May 23, 2016

NICHOLAS G. GARAUFIS
United States District Judge