UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

IMRAN ALI,

**MEMORANDUM & ORDER**

Plaintiff,

**11-CV-5297 (NGG) (VMS)**

-against-

POLICE OFFICER WILLIAM CONNICK and
SERGEANT DONALD KIPP

Defendants.
--------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Imran Ali brings this action against two employees of the New York City Police

Department ("NYPD"): Police Officer William Connick ("Connick") and Sergeant Donald Kipp

("Kipp"). (Am. Compl. (Dkt. 7).) The parties filed a joint pre-trial order on December 22, 2015,

(Joint Pre-Trial Order (Dkt. 55)), and respective motions in limine to exclude certain evidence on

April 18, 2016, (See Pl.s' Mot. in Lim. (Dkt. 62); Defs.' Mot. in Lim. (Dkt. 63)). An amended

joint pre-trial order adding new trial exhibits was filed on May 19, 2016 (Am. Joint Pre-Trial

Order ("JPTO") (Dkt. 72)), and entered by the court on May 20, 2016 (May 20, 2016, Order).

On May 23, 2016, the court issued a memorandum and order addressing the first motions in

limine. (Mots. in Lim. Mem. & Order (Dkt. 75).) Before the court is Plaintiff's second pre-trial

motion in limine regarding certain of the new exhibits in the JPTO. (See Pl.'s Second Ltr.-Mot.

in Lim. ("Pl.'s Mot.") (Dkt. 74); Defs.' Ltr.-Opp'n to Pl.'s Second Mot. in Lim. ("Defs.' Opp'n")

(Dkt. 81).) For the reasons set forth below, Plaintiff's motion is GRANTED in part, DENIED in

part, and RESERVED in part.

# I.    BACKGROUND

The court assumes familiarity with the underlying facts and procedural history of this action, and refers to its prior opinions for additional detail. (See Mots. in Lim. Mem. & Order at 2-3; Summ. J. Mem. & Order (Dkt. 50) at 1-4.)

# II.   LEGAL STANDARD

## A.    Motion in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41.

## B.    General Rules of Admissibility

Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402. Thus, "unless an exception applies, all '[r]elevant evidence is admissible.'" United

States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 402). Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Second Circuit has characterized this relevance standard as "very low." See White, 692 F.3d at 246 (quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)). Indeed, "[t]o be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010).

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Old Chief v. United States, 519 U.S. 172, 184 (1997). In short, Rule 403 requires "the district court [to] make a conscientious assessment of whether unfair prejudice substantially outweighs probative value" with regard to each piece of proffered evidence. Al-Moayad, 545 F.3d at 160 (quoting United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998) (per curium)).

## III.    DISCUSSION

Plaintiff moves to exclude seven exhibits to the Amended Joint Pre-Trial Order ("JPTO"). Five of the documents relate to Plaintiff's arrests in 2011 and in 2013. Another document is Plaintiff's deposition testimony in an unspecified state court action. The last document is Plaintiff's DMV Record and Driving Abstract. The parties have not attached the

3

documents sought to be excluded in their submissions, and it is unclear what some of the documents concern. (See, e.g., Pl.'s Mot. at 1-3 (noting that Ex. KK is a criminal court file relating to the 2013 DWI arrest, but that it contains a decision relating to the 2011 attempted burglary arrest).) Therefore, the court addresses admissibility of these documents by subject matter, rather than by exhibit.

## A. 2011 Arrest

Plaintiff seeks to preclude the use of documents relating to his 2011 arrest pursuant to Federal Rules of Evidence 403, 609, and 801. (See generally id.) The parties agree that evidence of Plaintiff's "criminal conviction for an E non-violent felony for attempted burglary in the third degree," which followed the 2011 arrest, may be admissible under Rule 609(a)(1), but disagree on whether it should nonetheless be excluded as more unfairly prejudicial than probative pursuant to Rule 403. (Id. at 4-6; see also Defs.' Opp'n at 4-5.)

Rule 609(a)(1) provides that, "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence must be admitted, subject to Rule 403, . . ." if used to attack a witness's character for truthfulness. Fed. R. Evid. 609(a)(1). This Rule "presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." United States v. Estrada, 430 F.3d 606, 617 (2d Cir. 2005). In balancing the probative value of a prior felony conviction against its prejudicial effect under Rule 403, courts consider: "(1) the impeachment value of the prior conviction; (2) the remoteness of the prior conviction; (3) the similarity between the prior conviction and the conduct at issue; and (4) the importance of the credibility of the witness." Maize v. Nassau Health Care Corp., No. 05-CV-4920 (ETB), 2012 WL 139261, at *2 (E.D.N.Y. Jan. 18, 2012).

4

With respect to the first factor, contrary to Plaintiff's contention that "the impeachment value of a burglary conviction is weak" (Pl.'s Mot. at 5), the Second Circuit has stated that "theft" crimes "rank[] high on the scale of probative worth on credibility" and can be "quite probative of veracity." Estrada, 430 F.3d at 618; see also Robinson v. Troyan, No. 07-CV-4846 (ETB), 2011 WL 5416324, at *2 (E.D.N.Y. Nov. 8, 2011) (admitting evidence of prior attempted burglary conviction for impeachment purposes); Maize, 2012 WL 139261, at *2 (admitting evidence of prior burglary conviction for impeachment purposes). Plaintiff nonetheless argues that the impeachment value of his prior conviction is diminished here because the jury would know he was arrested as part of the events underlying this civil action. (Pl.'s Mot. at 5 (citing Bourguignon v. Lantz, No. 05-CV-245 (WIG), 2008 WL 4183439 (D. Conn. Sept. 10, 2008)).) Presumably, Plaintiff's position is that because the jury will know Plaintiff had been arrested, it would be unlikely that they would have "an impression of Plaintiff as a model citizen," thus lessening the impeachment value of the conviction. Bourguignon, 2008 WL 4183439, at *4. However, the plaintiff in Bourguignon was in jail when the events underlying his action arose, and he remained in prison during the course of the trial. For that reason, the court found it unlikely that the jury would view him as a model citizen. Here, the fact that Plaintiff was arrested or even pleaded guilty to driving while impaired is neither comparable to a person who has been incarcerated nor a felony conviction for attempted burglary. More importantly, the Bourguignon court found that the plaintiff's credibility "will not be an issue" and so evidence of the conviction would be more unfairly prejudicial than probative. Here, as will be explained shortly, Plaintiff's credibility is a critical issue. Accordingly, the court finds that the impeachment value of Plaintiff's attempted burglary conviction is high, and weighs in favor of its use.

Plaintiff concedes that the second and third factors weigh in favor of the use of the prior conviction, and the court agrees. (See Pl.'s Mot. at 5.) The prior conviction is not too remote in time, and it is dissimilar to the conduct at issue in this case such that risks of unfair prejudice and confusing the issues are low.

As to the fourth factor, while Plaintiff concedes that generally, "credibility of witnesses is significant in excessive force cases especially where the parties present divergent stories as to what happened," he argues it is nonetheless unimportant here because "interpretation of the physical evidence by the jury will radically [a]ffect the credibility determination." (Id.) The court fails to follow Plaintiff's logic. The physical evidence presented in this case may influence the jury to believe one witness's testimony over another, but this is an unexceptional proposition. Physical evidence in most, if not all, cases likely leads the jury to believe one party more than the other. However, that does not mean that other evidence probative of credibility is any less important. Here, the jury will be faced with "divergent versions of what occurred during the period of plaintiff's confinement." Maize, 2012 WL 139261, at *2. "[T]he jury's central task will be to determine who is telling the truth[, and] Plaintiff's 'credibility on the stand is therefore of decisive importance.'" Id. (quoting Daniels v. Loizzo, 986 F. Supp. 245, 251 (S.D.N.Y. 1997)). The fourth factor, the importance of the credibility of the witness, thus weighs in favor of the use of Plaintiff's prior conviction. All factors in favor, the court concludes that evidence of Plaintiff's attempted burglary conviction is admissible for purposes of impeachment.

Plaintiff also argues that, even if evidence of the prior conviction is admissible, the court should "limit the discussion to the mere fact that Mr. Ali was convicted of a crime and that he received no jail [time] for the conviction." (Pl.'s Mot. at 5.) The court disagrees. It is true that "it is within the discretion of the district courts to further limit the evidence of the prior

conviction to exclude the nature or statutory name of the offense." United States v. Brown, 606

F. Supp. 2d 306, 312 (E.D.N.Y. 2009). However, as demonstrated by the cases Plaintiff cited in

support of his argument, courts generally do so only where the prior conviction involved crimes

that have "little bearing on the veracity of . . . a witness." Id. at 315-16, 319 (noting convictions

of criminal contempt and drug possession rank "low on the impeachment value scale"); see

Twitty v. Ashcroft, No. 04-CV-410 (DFM), 2010 WL 1677757, at *2 (D. Conn. Apr. 23, 2010)

(finding "convictions for threatening . . . not particularly probative as to honesty or veracity").

Where the crime of the prior conviction ranked "low on the impeachment value scale," the unfair

prejudice to the witness understandably outweighs the probative value in introducing the name

and details of the crime. Here, however, the opposite is true. Convictions for attempted burglary

rank high on the impeachment value scale and are probative of veracity. Estrada, 430 F.3d

at 618; see Robinson, 2011 WL 5416324, at *2. The court therefore declines to preclude the

nature and statutory name of Plaintiff's prior conviction.

**B.      2013 Arrest**

Plaintiff further moves to exclude evidence relating to his 2013 arrest for driving while

intoxicated. (Pl.'s Mot. at 2-4.) Plaintiff argues that such evidence is inadmissible under Federal

Rules of Evidence 403 and 801.[1] (Id.) Defendants contend that the disputed exhibits, with the

exception of a video relating to the 2013 arrest, will not be offered to the jury, and therefore do

not qualify as hearsay under Rule 801. (Defs.' Mot. at 4.) Defendants also assert that evidence

of the arrest are relevant to Plaintiff's damages claim. (Id. at 2-4.)

---

[1] Plaintiff also argues that the driving while intoxicated arrest is inadmissible under Federal Rules of Evidence 609.
(Pl.'s Mot. at 4.) The court agrees, and Defendants have not asserted its admissibility pursuant to Rule 609. (See
Defs.' Opp'n.)

1.    Evidence of Violation

With the exception of a video relating to the arrest that will be addressed separately, the

court agrees with Plaintiff that there is no cognizable basis for introducing evidence of

Plaintiff's 2013 arrest for driving while intoxicated—for impeachment or otherwise. Defendants

argue in their opposition that "documentary evidence of these subsequent arrests . . . refut[es]

Plaintiff's purported physical damages stemming from the injury he sustained on July 17, 2009."

(Defs.' Mot. at 4.) Defendants offer no further explanation. The court does not see how the fact

that Plaintiff was arrested for driving while intoxicated in 2013 sheds any light on whether

Plaintiff was injured in 2009. Furthermore, as the court noted in its prior memorandum and

order addressing the parties' first motions in limine, "jurors don't tend to like people who drive

drunk," and that "references to Plaintiff's guilty plea for driving while intoxicated may cast him

in a negative light." (Mots. in Lim. Mem. & Order at 10 (quoting United States v. Landry, 631

F.3d 597, 604 (1st Cir. 2011)).) Without connecting the fact of the arrest and Plaintiff's claims

of injuries, Defendants may not introduce evidence of the arrest for any purpose. Plaintiff's

motion to preclude evidence of the 2013 arrest, except for the video relating to the arrest

addressed below, is thus granted.

2.    Intoxicated Driver Testing Unit Video

Defendants devote a significant portion of their opposition to Plaintiff's second motion in

limine to explaining how the Intoxicated Driver Testing Unit ("IDTU") video relating to

the 2013 arrest is relevant to Plaintiff's claims for injuries, and thus his damages. (Defs.' Opp'n

at 2-4.) The video shows Plaintiff handcuffed in a room with two police officers and Plaintiff

appears to be in an agitated and combative state. From the audio accompanying the video,

Plaintiff can be heard cursing at the officers and yelling that they are assaulting him, referencing

his ongoing "civil action." Defendants argue that the video is highly probative of Plaintiff's damages claim because Plaintiff has testified in his deposition that his encounter with Defendants in 2009 caused him to develop a severe fear of the police, and that he now becomes nervous and starts shaking whenever he interacts with the police. (Id.) Defendants also note that the video contradicts Plaintiff's claim that, because of the injuries he suffered in 2009, he "can't be upset for long" or else his "head is going to split open," and that he suffers from extreme sensitivity to light and a fear of loud noises. (Id.) Plaintiff argues that the video is unfairly prejudicial because he "clearly [wa]s not 'on his best behavior,'" and Defendants are attempting to deploy the "highly inflammatory" video to "poison the jury." (Pl.'s Mot. at 3.) According to Plaintiff, any probative value in the video is outweighed by the unfair prejudice. (Id. at 3-4.)

As a preliminary matter, the court rejects Plaintiff's argument that the video relates to collateral matters. (Id. at 4.) "[A] fact is not a collateral matter if it could be shown in evidence for any purpose independent of the contradiction." Rosario v. Kuhlman, 839 F.2d 918, 926 (2d. Cir. 1988) (quoting People v. Schwartzman, 247 N.E.2d 642, 645 (N.Y. 1969)). The video, Defendants contend, relates directly to Plaintiff's damages claims and thus is material in this trial. See Paine v. City of Lompoc, 160 F.3d 562, 566 (9th Cir. 1998) (finding issues relating to damages not collateral). A jury viewing this video can infer from Plaintiff's behavior that he is not afraid of the police. Although a more tenuous link, a jury may also infer from the five-minute video snapshot that Plaintiff can, in fact, be upset for an extended period with little ill effects, that he is not sensitive to light, or fear loud noises. The video goes to the heart of Plaintiff's injuries, and thus is not a collateral issue in this action.

The critical question is whether the probative value of the video is substantially outweighed by its inflammatory nature and risks of "unfair prejudice, confusing the issues, [or]

misleading the jury." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Old Chief, 519 U.S. at 184. Here, especially as it relates to Plaintiff's fear of the police, there do not appear to be many—if any—evidentiary alternatives that can stand in the place of the video. Without it, it appears that Plaintiff's testimony that he fears the police will not be tested. The video is therefore highly probative of Plaintiff's damages allegations as measured by evidentiary alternatives. However, the court also recognizes that there is a palpable danger of unfair prejudice to Plaintiff if the video is shown to the jury. While Plaintiff's combative language and conduct may paint him in a poor light in the eyes of the jury, the court is more concerned with an aspect of the video that neither party squarely addressed in their submissions. At several moments in the video, Plaintiff can be seen falling or losing balance, seemingly on his own, and then yelling that the police officers are assaulting him and threatening to sue the officers, specifically referencing his ongoing civil action against the NYPD. It is conceivable that a jury could conclude that Plaintiff is pretending to be hurt in the video with the intention of suing the NYPD. This inference, if drawn, may in turn lead to a dangerous connection between Plaintiff's conduct in the video and, generally, his character for truthfulness, and, specifically, that Plaintiff is lying about the incident underlying this action. While Defendants have not stated they desire the jury to make such an inference, the court notes that the use of the video to prove such "specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness" is plainly prohibited by Federal Rule of Evidence 608(b). Fed. R. Evid. 608(b). Thus, the video has the potential to be greatly prejudicial for an impermissible reason.

After careful consideration, the court cannot say that the video's probative value is substantially outweighed by any unfair prejudice occasioned upon Plaintiff such that exclusion is necessary. The video is highly probative of Plaintiff's alleged injuries because, among other reasons, it may be the only evidence that counters Plaintiff's claims that he fears the police. Furthermore, the idea that Plaintiff was faking an assault in the video, and thus may be faking the alleged assault underlying in this case, is by no means an inescapable and necessary inference. Plaintiff is free to argue otherwise. To mitigate any danger of unfair prejudice, the court will permit Plaintiff to propose that an excerpt of the video be shown to the jury. Defendants may not need to show the entire five-minute video to be prove their point that Plaintiff may not fear the police or suffers from the physical ailments that he has alleged. Plaintiff may also propose a limiting instruction advising the jurors that the video may only be considered in relation to Plaintiff's injuries and damages claim, and nothing else. Epstein v. Kalvin-Miller Int'l, Inc., 121 F. Supp. 2d 742, 747 (S.D.N.Y. 2000) (permitting proposal of a limiting instruction relating to a piece of evidence whose probative value the court concluded was not substantially outweighed by unfair prejudice under Rule 403). If Plaintiff chooses to do so, he must submit proposed language for the court's and Defendants' consideration before the video is to be admitted. However, because the video's probative value is not substantially outweighed by any unfair prejudice, the court denies Plaintiff's motion to exclude the IDTU video.

**C.      State Court Deposition**

Next, Plaintiff moves in limine to exclude Plaintiff's state court deposition transcript from trial. (Pl.'s Mot. at 4.) Plaintiff argues that while the deposition is a sworn statement and thus not hearsay, it would be improper to admit it into evidence to show Plaintiff's litigiousness. (Id.) Plaintiff is correct. "The court recognizes, and defendants concede, that it is generally

improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a 'chronic litigant.'" <u>Jean-Laurent</u>, 840 F. Supp. 2d at 542. Defendants instead respond vaguely that "Defendants will confront the Plaintiff with his prior testimony should the need for impeachment arise." (Defs.' Opp'n at 4.) The parties have not explained to the court what this state court action concerned. Nor have the parties discussed the subject—much less the substance—of this disputed state court deposition testimony. The court therefore is not in a position to rule on Plaintiff's motion, and accordingly reserves decision on the use of the state court deposition until trial.

### D. DMV Record and Driving Abstract

Defendants also seek to use Plaintiff's DMV Record and Driving Abstract to impeach him as to his damages claim. Plaintiff moved in limine to prevent Defendants from doing so. As with the non-video evidence of Plaintiff's 2013 arrest, Defendants do not articulate any reason why evidence of subsequent convictions for driving while intoxicated is relevant to Plaintiff's injuries. Accordingly, Plaintiff's motion is granted. (<u>See</u> <u>supra</u> Part III.B.1.)

## IV. CONCLUSION

For the reasons stated above, Plaintiff's second motion in limine to exclude: (1) evidence of the 2011 arrest and subsequent conviction for attempted burglary in the third degree is DENIED; (2) evidence of the 2013 arrest for driving while intoxicated is GRANTED with the exception of the IDTU video; (3) Plaintiff's state court deposition testimony is RESERVED; and (4) Plaintiff's DMV Record and Driving Abstract is GRANTED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     May **31**, 2016

NICHOLAS G. GARAUFIS
United States District Judge